WICHITA MILL & ELEVATOR CO. ET AL. v. STATE OF TEXAS ET AL.

Decided October 20, 1909.

1.—District Clerk—Costs—Copies of Petition.

Plaintiff, suing in one action numerous defendants residing in various counties, furnished the district clerk printed copies of the petition for service upon them; these as furnished required some pasting of printed corrections and filling of blanks by hand, and a part of the printing bill was paid by the clerk; but the latter agreed to charge plaintiff with costs therefor under section 2 of the Act of March 12, 1901, Laws, 27th Leg., p. 24, as in case where the copies

were furnished by plaintiff and merely examined and certified by the clerk, instead of the fee allowed him by section 1 for making the copies. Held, that the clerk was estopped by such agreement from taxing as costs against defendants, who had been cast in the suit, the fees allowed him by section 1 of such Act, for making certified copies of the petition for service on defendants.

**2.—Same—Costs Incurred by Plaintiff—Judgment against Defendant.**

Where plaintiff has judgment the defendant is taxable for costs incurred by plaintiff, only in the amount for which plaintiff was liable.

Error from the District Court of Travis County. Tried below before Hon. George Calhoun.

*J. W. Terry, W. D. Williams, H. M. Garwood* and *M. M. Crane*, for defendants in error.—It being shown that the copies of the petition served on the nonresident defendants were prepared and submitted to the clerk by the plaintiff, the State of Texas, and that the only duty of the clerk in connection therewith was to compare same, and if found correct to certify thereto, he was entitled to ten cents per page of three hundred (300) words, and no more, for such service of comparing, and fifty (50) cents for each certificate and seal, amounting in the aggregate to five hundred, sixty-six and 50-100 ($566.50) dollars. Acts of 1901, p. 24.

*R. L. Penn* and *Warren W. Moore*, for D. J. Pickle, district clerk.— The evidence not only failed to show that the plaintiff, the State of Texas, furnished to the clerk the necessary number of true and correct copies of the petition for service upon the nonresident defendants, but, on the contrary, it was shown by the absolutely uncontroverted evidence that the plaintiff did not prepare or furnish to the clerk any such true and correct copies of the petition, and this being the case, it was not only the right of the clerk, but it was his duty under the law, to charge for such copies of the petition issued by him at the rate of twenty cents per one hundred words. Rev. Stats., art. 2453, as amended by Laws of 1901, p. 24.

KEY, Associate Justice.—The State brought this suit against a large number of defendants for alleged violations of the anti-trust statute of the State. At the trial judgment was rendered in favor of the State for $35,000, and the defendants have brought the case to this court by writ of error.

The only question presented for decision relates to the action of the District Court in overruling a motion to retax the bill of costs made out and claimed by D. J. Pickle, the clerk of that court. His bill of costs includes an item of $3,090 for issuing and certifying to 103 copies of the plaintiffs' petition. The motion to retax challenged the correctness of that item and asserted that he was only entitled to $566.50 for the services referred to. The trial court overruled the motion to retax and that ruling is assigned as error.

Fees which district clerks are allowed to charge are fixed by the Act of the Twenty-seventh Legislature, approved March 12, 1901, and so much of it as has application to this case reads as follows:

"Section 1. Be it enacted by the Legislature of the State of Texas:

That the clerks of the District Courts shall receive for the following services in civil cases the following fees, to wit:

"For copy of petition, including certificate and seal, each one hundred words, $ .20.

"Sec. 2.    Whenever in any suit a certified copy of any petition or any other instrument is necessary in the District Court, it shall be lawful for the plaintiff or defendant to prepare such true and correct copy thereof, and submit the same to the clerk of the District Court, whose duty it shall be to compare the same with the original instrument, and if found to be correct he shall attach his certificate of true copy.    For such services he shall receive 50 cents for each certificate and seal, and in addition thereto the sum of 10 cents per page, three hundred words to the page, for each page of each copy."

It is conceded by counsel that if the clerk was entitled to charge under the first section his bill is correct and the motion was properly overruled; but if he was not entitled to charge under that section, and should have made his charge under the second section, the motion should have been granted and the item of costs referred to reduced to $566.50.    The undisputed testimony shows that the attorney-general's department originally decided to sue each defendant separately, and, in view of that fact, decided to prepare a form of petition and have it printed.    It was also shown that an agreement was entered into between the attorney-general's department and Mr. J. P. Hart, then the clerk of the District Court of Travis County, with a view to having enough copies printed for Mr. Hart's use in sending out copies of the petition with the citations, to be served on the several defendants residing out of the county, Mr. Hart agreeing to pay his proportion of the expense of printing the petitions.    The attorney-general's department had 800 copies of the petition printed and delivered to that department.    Mr. Hart testified that he offered to pay that department his portion of the printing expense, which the representative of the department to whom the offer was made declined to accept, and Mr. Hart paid nothing under the agreement referred to, and went out of office before the suit was filed.    Mr. Hart was succeeded by Mr. Pickle, the present clerk, who advised the attorney-general's department that he was willing to carry out the agreement made with Mr. Hart, and was told by the department that that was all right, but that they were not then ready to bring the suit.    Finally the attorney-general's department decided to bring only one action against all of the defendants; and, in view of that decision, it became necessary to make some changes in the petition which had been prepared and printed but not filed.    The petition as originally prepared consisted of thirty pages of printed matter, blank lines being left on the first and second pages for the insertion of the names and residences of the defendants, and on the last page blanks were left for the signature of the attorney-general and the other attorneys associated with him in the case.    Having reached the conclusion to file but one suit, the attorney-general department had a leaflet prepared and printed, changing the first three pages of the petition so as to show the names and residences of the several defendants, which three pages were pasted in the front of one copy of the original petition; and had an-

other leaflet printed and pasted in so as to constitute the last page of the petition, which leaflet made a change in the prayer. On November 9, 1907, the suit was instituted, and the copy of the petition referred to, with the leaflets pasted in, the attorneys' names signed and a few other formal blanks filled in writing, was used for that purpose.

Before the suit was brought there was an understanding between Mr. Lightfoot, an assistant attorney-general, acting for the State, and Mr. Pickle, in person, to the effect that if the State was cast in the suit and the costs taxed against it, Mr. Pickle was not to claim or receive any more than the costs allowed under the second section of the statute above quoted, and at the same time Mr. Lightfoot informed Mr. Pickle that he had the printed copies of the petition which he desired to furnish him to be used in serving the parties outside of the county, and Mr. Pickle sent to the attorney-general's office and obtained the necessary copies, including the leaflets necessary to correct the petition as originally printed. The leaflets had not been pasted in, but Mr. Pickle and his deputies pasted them in and, with typewriter, pen and ink, filled in the blanks, so as to make correct copies of the petition as filed, and these copies were used by Mr. Pickle in making the 103 certified copies referred to in the item of costs under consideration. Mr. Pickle stated in his testimony that at the time the suit was filed he had a conversation with Mr. Lightfoot in regard to what the State was to pay in the event it was defeated in the suit and cast in the costs. He states that he said he was going to charge "right straight through for the petitions, but that if the State lost its case, on account of the large amount of costs in it, he was willing to charge under the statute for comparing and certifying." He also testified that at the time the service was rendered he entered the charges in his fee book under the first section of the statute and for the amount now claimed.

It was also shown that the company that did the printing had attempted to collect $23 as part payment therefor from both Mr. Hart and Travis County, and that three days after this motion was filed Mr. Pickle paid that bill. It was not shown that Mr. Pickle had ever acquired Mr. Hart's interest or been subrogated to his rights under the agreement between him and the attorney-general's department.

We have reached the conclusion that the motion to retax was well taken, and that the trial court erred in overruling it. It is not deemed necessary to determine whether or not section 2 of the statute should be liberally construed in favor of the litigant or strictly construed in favor of the officer, because we are of opinion that, upon the undisputed testimony Mr. Pickle, the clerk, is estopped from claiming costs in the particulars under consideration otherwise than as provided by that section of the statute. Even if his predecessor, Mr. Hart, was part owner of the 800 copies of the petition which were delivered to the attorney-general's department, which point we do not decide, such ownership resulted from a private and unofficial contract on Mr. Hart's part, and Mr. Pickle was not subrogated thereto by reason of the fact that he succeeded Mr. Hart as district clerk. This being the case, it must be held that the printed copies of the petition, together with the printed leaflets intended to be pasted in and used as part of the same,

were furnished for the purpose of obtaining for the plaintiff the benefit of section 2 of the statute under consideration. Such being the case, and the clerk having used them knowing that they were furnished for that purpose, he must be held to have waived any objection which he might otherwise have made. If he had declined to use them and had notified the plaintiff's counsel of that fact, then it would be necessary to decide whether or not what was furnished constituted a true and correct copy of the plaintiff's petition. But, not having pursued that course, and having accepted and used what was furnished to him upon the theory that it was meeting the requirements of section 2 of the statute, it would be unjust and inequitable to permit him to deny the correctness of the copies furnished. He was furnished with printed matter which, when placed together, constituted correct copies of the petition; with a few exceptions, consisting of blanks in which to insert names, dates and a few other formal matters. The endorsements on the back of the petition did not constitute part of the petition, and it was not necessary that they should be included in the copies served on the defendants. (Pruitt v. State, 92 Texas, 434, 49 S. W., 366.) At any rate, the actual services rendered by the clerk, using the material furnished by the plaintiff, was so small in comparison to what would have been required to make copies of the petition, as required by the first section of the statute, as to demonstrate that it would be inequitable to allow the clerk to accept and use that material upon the understanding that, as between him and the plaintiff, he was to look to section 2 of the statute for his compensation, and thereafter assert his right to claim more, as prescribed by the first section.

But it is contended and urged on behalf of the clerk that, as the costs were adjudged against the defendants, it is immaterial what amount of costs he would have been entitled to claim if they had been adjudged against the plaintiff. In other words, the argument is that there is no privity between the plaintiff and defendants, and that the latter are not subrogated to the rights of the former. It is prescribed by statute that "each party to any suit shall be responsible to the officers of the court for the costs incurred by himself." (Article 1421.) And it is also declared that "each party to a suit shall be liable for all costs incurred by him, and in case the costs can not be collected of the party against whom the same have been adjudged, execution may issue against any party in such suit for the amount of costs incurred by such party, but no more." (Rev. Stats., art. 2491.)

From these provisions of the statute we conclude that when the costs are incurred the party at whose instance and on whose behalf they are incurred becomes primarily liable therefor; and, while such primary liability may be changed by the judgment to secondary liability, the liability itself never ceases until the costs are paid. So in this case, the item of costs under consideration having been incurred by and on behalf of the State, who was the plaintiff, that liability did not cease when the costs were adjudged against the defendants. In other words, when a party is cast in a suit, unless it is otherwise ordered by the court, he becomes liable, not only for the costs incurred on his behalf, but for those incurred on behalf of his adversary; but as to the latter

costs they are such, and such only, as were incurred by and properly chargeable to the adverse party. Hence we conclude that a proper construction of the statute, as well as sound public policy, requires a holding that an officer of the court should not be permitted to discriminate between litigants, and charge fees against one at a higher rate than he could have charged against the other, if the latter had been cast in the suit.

We do not concur in the contention that, in determining the liability of the defendants, it is immaterial what may have been the liability of the plaintiff. On the contrary, and by force of article 2491 of the statute, on the item of costs here involved, and all others incurred by the plaintiff, the defendants' liability is measured by and limited to the liability of the plaintiff. As to such costs the clerk has no right to claim any more from the defendants than he could have claimed from the plaintiff.

The judgment of the District Court on the motion will be reversed and judgment here rendered sustaining the motion to retax the costs, and reducing the item referred to from $3,090 to $566.50. The main judgment will be affirmed. Costs of this court taxed against defendant in error Pickle.

*Reversed and rendered in part and in part affirmed.*